629 A.2d 1042

**Dennis K. WERKMAN and Jacqueline Werkman, Husband and Wife, Appellees,**

**v.**

**ERIE INSURANCE EXCHANGE, Appellant.**

Superior Court of Pennsylvania.

Argued April 14, 1993.

Decided Aug. 12, 1993.

Leonard R. Reeves, Latrobe, for appellant.

Paul F. Laughlin, Pittsburgh, for appellees.

Before WIEAND, POPOVICH and HESTER, JJ.

POPOVICH, Judge:

■ This is an appeal from the order entered by the Court of Common Pleas of Westmoreland County on April 14, 1992. The question presented on appeal is whether two individuals involved in an automobile accident with an uninsured motorist

can "stack" uninsured motorist benefits under one insurance policy covering three vehicles, given that 1) the individuals were class one insureds and 2) the policy covers two personal vehicles and one commercial vehicle. We hold that they can stack uninsured motorist coverage and, accordingly, affirm the order of the trial court.

The facts are undisputed. On July 22, 1989, appellees' motorcycle was struck by an automobile operated by an uninsured motorist. Appellees sustained severe injuries as a result of the accident. At the time of the accident, appellees resided with appellee-husband's father, Charles Werkman (hereinafter "father"). Father was the insurance policy holder of an automobile insurance policy called Pioneer Commercial Auto Policy written by the Erie Insurance Exchange. The policy provided coverage for two personal vehicles and one commercial vehicle. The commercial vehicle was a dump truck that was used by father for the maintenance of his home and trailer park. Vehicles such as father's dump truck are designated by Erie Insurance as commercial vehicles when the vehicles are over a certain weight or are used in business applications. Father used the dump truck for both business and personal purposes. However, the dump truck, because of its weight, was designated as a commercial vehicle. The two personal automobiles were also covered under the commercial policy. Father paid three separate premiums for uninsured motorist coverage provided by a single policy covering three vehicles.

Appellees claimed uninsured motorist coverage related to all three vehicles insured on the Pioneer Commercial Auto Policy under principles of stacking. Erie Insurance conceded the applicability of stacking of the personal vehicles, but denied that the commercial vehicle could be considered for purposes of stacking.

Appellees brought a declaratory judgment action, seeking a ruling for the allowance of stacking of coverage for the commercial vehicle. The trial court ruled that according to Pennsylvania case law, appellees were not permitted to stack

uninsured motorist coverage of a commercial vehicle covered under a combined personal/commercial automobile policy. Appellees filed a post-trial motion, wherein appellees sought reconsideration of the decision of the trial court. The trial court determined that it made an error in its original ruling in favor of appellant. The court stated that the error had been made because the court "analyzed the situation from the point of view of characterizing the policy, rather than reading the policy and determining its contractual import." Trial Court Opinion, April 14, 1992, p. 1.

Before reviewing the language of the insurance contract, we address appellant's contention that Pennsylvania law prohibits the stacking of uninsured motorist coverage of a commercial vehicle.

This court stated in *Boyle v. State Farm Mut. Auto Ins. Co.*, 310 Pa.Super. 10, 21, 456 A.2d 156, 162 (1983), that the "purpose of the uninsured motorist law has been frequently and consistently interpreted by our courts as providing protection to innocent victims of uninsured drivers," and that Pennsylvania statutes were "designed to give monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injuries through the negligent use of those highways by others." *Harleysville Mutual Casualty Co. v. Blumling*, 429 Pa. 389, 395, 241 A.2d 112, 115 (1968). In cases in which the loss exceeds the limits of the uninsured/underinsured motorist benefits under one policy, the insured may recover from or stack other available policies up to their individual limits or to the amount of the actual loss. *Id.* Stacking allows the insured to get the full benefit of premiums he or she paid. *Jeffrey v. Erie Ins. Exchange*, 423 Pa.Super. 483, 621 A.2d 635, 645 (1993).

The Pennsylvania Supreme Court addressed the subject of uninsured motorist coverage involving commercial fleet policies in *Utica Mutual Ins. Co. v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005 (1984). In that case, the executrix of decedent's estate filed an action claiming entitlement to uninsured motorist benefits under a commercial fleet policy and a personal

automobile insurance policy. In *Utica*, our Supreme Court divided insureds into three classes:

(a) The named insured and any designated insured and, while residents of the same household, the spouse and relatives of either,

(b) any other person while occupying an insured highway vehicle; and

(c) any person with respect to damages he is entitled to recover because of bodily injury to which this insurance applies sustained by an insured under (a) or (b) above.

Id. at 338, 473 A.2d at 1012. Our Supreme Court ruled, in *Utica*, that the decedent was a "class two" insured because he was merely a passenger of the vehicle insured under the commercial fleet policy. In ruling that the estate was not allowed to stack the coverage under the fleet policy, the court reasoned that since the decedent had asserted nothing more than "class two" coverage, his entitlement arose from his temporary status as an occupant, rather than from his being a specifically intended beneficiary of the insurance policy. In its decision, the Pennsylvania Supreme Court specifically left for another day the "question of whether a 'class one' insured may stack coverages under a fleet policy." *Id.* 473 A.2d at 1010–1011, n. 4.

This court was faced with that issue in *Miller v. Royal Ins. Co.*, 354 Pa.Super. 20, 510 A.2d 1257 (1986), *aff'd per curiam*, 517 Pa. 306, 535 A.2d 1049 (1988), wherein the court ruled that although the injured party was a class one insured, the classification was irrelevant in light of its determination that coverage under a fleet policy may not be stacked. The reasoning of the court in *Miller*, was followed in *Thompson v. Royal Ins.*, 361 Pa.Super. 78, 521 A.2d 936 (1988), *appeal denied*, 520 Pa. 590, 551 A.2d 216 (1988), and this court refused to allow stacking under a commercial fleet policy.

Finally, in a case similar to the present case, this court ruled that stacking of commercial vehicles under a commercial fleet policy was not permitted but concluded that stacking would be permitted for the five private passenger autos cov-

ered by the same business auto policy. *Lastooka v. Aetna Ins. Co.*, 380 Pa.Super. 408, 552 A.2d 254, *allocatur granted,* 522 Pa. 613, 563 A.2d 498 (1989). The fleet policy involved in *Lastooka,* covered a total of 28 vehicles, five of which were personal vehicles.

Appellant contends that *Lastooka* controls the outcome of the present case. Asserting that there is no difference between a fleet policy and a commercial policy, appellant argues that stacking of the insured's commercial vehicle should be prohibited while stacking of personal vehicles would be permitted. We disagree.

The reasoning behind disallowing stacking of fleet policies is that such policies potentially cover a multitude of vehicles. *Miller* 510 A.2d at 1259. "[T]o allow stacking would be to make premium costs prohibitively expensive and would not be within reasonable expectations of the insurer and the employer-policyholder...." *Miller v. Royal Insurance Company,* 510 A.2d at 1259, *quoting Yeager v. Auto–Owners Insurance Co.,* 335 N.W.2d 733, 739 (Minn.1983).

In *Yeager,* the Minnesota Supreme Court in a decision to allow stacking of uninsured motorist coverage of three commercial vehicles ruled that a policy covering three commercial vehicles should not be treated as a fleet policy:

> We, decline, however to address a question that is not before us. We do not have here a large, commercial fleet policy. Assuming arguendo there is validity to the arguments about prohibitive costs and reasonable expectations, these arguments have no force here.

*Id.,* 335 N.W.2d at 739.

As in *Yeager,* we are not faced here with a large, commercial fleet policy. The policy issued to father provided coverage for two personal vehicles and one commercial vehicle. A fleet policy is issued by appellant only when the policy holder is insuring five or more commercial vehicles. Appellant insured father's *only* commercial vehicle.

"It is a matter of common knowledge that many individuals have from three to seven vehicles, or more, on one policy for

family use. The policy is not considered to be a fleet policy." *Yeager*, 335 N.W.2d at 739. In *Lastooka, supra*, stacking of coverage for *five* personal vehicles was permitted. Presently, appellees sought to stack coverage for only one commercial vehicle.

In the context of coverage of personal use vehicles, the number of class one insureds and the number of vehicles covered are finite and readily discernible. *Lastooka*, 552 A.2d at 257. The right to stack coverage of personal use vehicles is well settled, and it should be foreseen that such coverage will apply to those vehicles. *Rosato v. Harleysville Mut. Ins.*, 328 Pa.Super. 278, 476 A.2d 1328 (1984), *Utica Mutual Ins. Co. v. Contrisciane*, supra. Therefore, stacking coverage for personal use vehicles would not be beyond the reasonable expectations of the insurer.

Appellant should have been aware that this would not be a fleet policy and that stacking was within the reasonable expectations of both parties. According to *Lastooka, supra*, the nature of the policy and that which it insures will control the stacking issue. This court stated in *Miller, supra*, that the insured is free to contract for protection against uninsured motorists with its insurer. We must, therefore, look at the insurance policy to determine the uninsured motorist coverage for which the insured and the insurer contracted.

Where the language of an insurance contract is clear and unambiguous, a court is required to give effect to that language. *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563 (1983). A court may not "rewrite" an insurance contract, or construe clear and unambiguous language to mean other than what it says. *Guardian Life Insurance Co. v. Zerance*, 505 Pa. 345, 479 A.2d 949 (1984).

The declaration page of the policy[1] provides that each vehicle was covered with uninsured and underinsured motor-

---

1. Since the insurance contract at issue was not included in the official record, we are not required to address the issue of whether the trial court properly interpreted the language of the insurance contract.

ists coverage, indicated as "unin/undr MOT BI LIM # 300M/ ACC", and the letter M equals a thousand dollars. Additionally, the declaration page refers to policy endorsements and exceptions to declaration items by form designation that would be applicable. Form ABPU02 06/87, regarding uninsured/underinsured coverage states the following:

> UNINSURED/UNDERINSURED MOTORISTS COVERAGE
>
> OUR PROMISE—UNINSURED MOTORISTS COVERAGE
>
> We will pay damages that the law entitles you or your legal representative to recover from the driver or owner of an uninsured motor vehicle. Damages must result from an accident arising out of the maintenance or use of the uninsured motor vehicle. Damages must involve bodily injury, meaning physical harm, sickness, disease or resultant death. We will not be bound by a judgment against the uninsured on the issues of liability or the amount of damages unless it is obtained with our written consent.
>
> OTHERS WE PROTECT
>
> (1) Any relative.
>
> Any relative "means, if a resident of your household,
>
> a) Your relative or ward ..."

According to the uninsured/underinsured motorists form referenced in the declaration page of the insurance contract, uninsured motorist coverage extended to the insured's dump truck. The policy does not exclude uninsured motorist coverage of a commercial vehicle.

In its opinion, the trial court correctly stated the following in regard to the insurance contract:

> The coverage provided for in the contract of insurance clearly indicated uninsured coverage for the vehicle in ques-

---

However, we note that both parties agree that the pertinent language of the contract was correctly quoted by the trial court. We will, therefore, review the excerpts of the insurance policy included in the trial court's opinion. Cf. *McCormick v. Allegheny General Hospital*, 364 Pa.Super. 210, 527 A.2d 1028 (1987).

tion, and the coverage as set forth in the endorsement provided that the relatives of Charles R. Werkman, here Dennis K. Werkman and Jacqueline Werkman, were covered regarding uninsured coverage.

[T]he three vehicles indicated on the auto declaration page of the policy of insurance in question here each allow for the limits of the uninsured motorists coverage, and therefore, Dennis K. Werkman and Jacqueline Werkman are entitled to the benefits therefrom, as protected or covered persons under the policy.

Trial Court Opinion, April 14, 1992, pp. 5–6.

Appellant was free to include in the insurance contract an express prohibition of stacking of uninsured motorist coverage for commercial vehicles. However, appellant failed to include such language in the insurance policy. In fact, the policy permits first class insureds to stack uninsured motorist coverage of all vehicles covered by the policy. Appellant wrote the insurance contract extended to the insureds and is bound to accept the terms of that contract. *Burne v. Franklin Life Insurance Co.*, 451 Pa. 218, 301 A.2d 799 (1973). We may not "rewrite" the clear language of the insurance contract, and, accordingly, we affirm the order of the trial court.

Order affirmed.