The INSURANCE COMPANY OF
EVANSTON, Appellee,

v.

Catherine BOWERS, Administratrix of
the Estate of Jarret D. Poston,
Deceased, Appellant.

Superior Court of Pennsylvania.

Argued March 29, 2000.

Filed Aug. 9, 2000.

William C. Van Scyoc, Erie, for appellant.

Stephen Poljak, Pittsburgh, for appellee.

BEFORE: DEL SOLE, ORIE MELVIN, and BECK, JJ.

ORIE MELVIN, J.:

¶ 1 Appellant Catherine Bowers, Administratrix of the Estate of Jarret D. Poston, Deceased, (the Estate) appeals from the trial court's grant of judgment on the pleadings in favor of Appellee, The Insurance Company of Evanston (Evanston), denying the Estate underinsured motorist (UIM) benefits under a business auto policy issued by Appellee to Outside–In School of Experiential Education, Inc. (Outside–In). The Estate claims the trial court erroneously concluded the decedent was not an insured for purposes of UIM coverage because he was not a "family member" of Outside–In. For the· following reasons, we affirm.

¶ 2 Evanston issued a Business Auto Policy, No. 1002CI014716–0, to Outside–In with a coverage period effective November 26, 1994 through November 26, 1995. On October 28th, 1995, Jarret D. Poston (the decedent) was struck and killed by a motor vehicle while participating as a bicyclist in a long-distance expedition supervised by Outside–In. Prior to the accident, the Erie County Court of Common Pleas had adjudicated the decedent delinquent. Due to his need for treatment, supervision and rehabilitation the court ordered his commitment to Outside–In for an indefinite period of time. The Estate made a claim against the tortfeasor's motor vehicle owner's liability insurance carrier, which settled for the policy limit of $10,000.00. Thereafter, the Estate made a claim with Evanston for UIM benefits under the policy issued to Outside–In. Evanston denied the claim asserting the decedent was not an insured under the policy.

¶ 3 Evanston then filed the instant declaratory judgment action seeking the court's declaration that the decedent is not an insured under the subject policy, and therefore, it need not extend the UIM coverage to his estate. The Estate filed an answer and counterclaim admitting the factual allegations but disputing Evanston's interpretation of the policy as not providing coverage. To the contrary, the Estate asserts the decedent is an insured by virtue of the policy's definition of family member or § 1702 of the MVFRL since he was made a ward of the state by operation of law through the delinquency proceedings, and subsequently made a ward of the named insured when placed under their custody, care, and supervision. Moreover, the Estate claims Evanston's interpretation would render the endorsement wholly meaningless, illusory, and absurd, as it would exclude any party from ever making a claim.

¶ 4 Alternatively, the Estate contends any denial of UIM coverage under the circumstances of this case is violative of the public policy of this Commonwealth. This alternative contention also makes up the substance of the counterclaim wherein the Estate requests a declaration from the court that denial of coverage violates the public policy of this Commonwealth. Specifically, the Estate alleges "the public

policy of this Commonwealth requires that a ward of the Commonwealth, placed into the custody, care and supervision of a corporation over which the ward has no control and for which the corporation is duly paid, and which corporation regularly thereafter exposes said ward to the types of intensive treatment and physically and emotionally demanding wilderness expeditions and accompanying, reasonably foreseeable risks as did Outside–In to the decedent in this case, be given coverage under and considered an insured within the parameters of the existing automobile insurance policies of such a corporation." Certified Record at 8, Answer and Counterclaim ¶ 39 at p. 8.

¶ 5 Evanston next filed a motion for judgment on the pleadings with respect to whether or not UIM coverage should be extended to the decedent. After the submission of briefs by the parties and argument thereon the trial court entered an Order granting a judgment on the pleadings in favor of Evanston. In its accompanying opinion, the court declared that pursuant to the definitions set forth in both the policy and under the Motor Vehicle Financial Responsibility Law (MVFRL), the decedent did not qualify as a family member of the named insured because the named insured is a corporate entity and as such cannot have a household within the common-sense meaning of that term. Therefore UIM coverage did not extend to the decedent's Estate. This timely appeal followed.

¶ 6 On appeal the Estate presents two questions for our review:

1. WHETHER THE DECEDENT, JARRET D. POSTON, IS AN INSURED UNDER THE POLICY OF MOTOR VEHICLE INSURANCE ISSUED BY THE APPELLEE, INSURANCE COMPANY OF EVANSTON[?]

2. WHETHER ANY INTERPRETATION OF THE SUBJECT INSURANCE POLICY THAT DETERMINES THE DECEDENT, JARRET D. POSTON, WAS NOT AN INSURED IS VIOLATIVE OF THE PUBLIC POLICY OF THE COMMONWEALTH OF PENNSYLVANIA[?]

Appellant's Brief at 3.

¶ 7 Our standard of review of appeals from the grant of a motion for judgment on the pleadings is well settled:

A motion for judgment on the pleadings should be granted only where the pleadings demonstrate that no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law. Thus, in reviewing a trial court's decision to grant judgment on the pleadings, the scope of review of the appellate court is plenary; the reviewing court must determine if the action of the trial court is based on a clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury. An appellate court must accept as true all well-pleaded facts of the party against whom the motion is made, while considering against him only those facts which he specifically admits. Neither party can be deemed to have admitted either conclusions of law or unjustified inferences. Moreover, in conducting its inquiry, the court should confine itself to the pleadings themselves and any documents or exhibits properly attached to them. It may not consider inadmissible evidence in determining a motion for judgment on the pleadings. Only where the moving party's case is clear and free from doubt such that a trial would prove fruitless will an appellate court affirm a motion for judgment on the pleadings.

*Consulting Eng'rs, Inc. v. Insurance Co. of N. America*, 710 A.2d 82, 83–84 (Pa.Super.1998) (citations and internal quotation marks omitted).

¶ 8 The Estate initially contends the trial court erred, as a matter of law, in granting Evanston's motion where the policy in question was ambiguous as to who

was covered thereunder. Specifically, the Estate asserts its decedent is entitled to benefits under the UIM endorsement found within Outside–In's policy because he was legally a "ward" of Outside–In and, therefore, a "family member" of the named insured as defined by the policy. Additionally, the estate claims coverage pursuant to the MVFRL's definition of insured because the decedent was "residing in the household of the named insured" as "a minor in the custody of . . . the named insured." 75 Pa.C.S.A. § 1702. We disagree.

¶ 9 The legal principles to be applied in reviewing coverage questions arising under insurance contracts are well settled.

[T]he task of interpreting [an insurance] contract is generally performed by a court rather than by a jury. The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument. Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement. Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to that language.

*Madison Constr. Co. v. Harleysville Mutual Ins. Co.*, 557 Pa. 595, 606, 735 A.2d 100, 106 (1999). "Also, the words of the insurance policy must be construed in their natural, plain, and ordinary sense." *Riccio v. American Republic Ins. Co.*, 550 Pa. 254, 263–64, 705 A.2d 422, 426 (1997). "Moreover, an insurance policy, like every other written contract, must be read in its entirety and the intent of the policy is gathered from consideration of the entire instrument." *Id.*

However, 'a contract is not rendered ambiguous by the mere fact that the parties do not agree upon the proper construction.' An ambiguity exists only when a policy provision is reasonably susceptible of more than one meaning. 'Courts should read policy provisions to avoid ambiguities, if possible, and not torture language to create them.' (citations omitted).

*Tenos v. State Farm Ins. Co.*, 716 A.2d 626, 629 (Pa.Super.1998) (quoting *Ryan Homes, Inc. v. Home Indemnity Co.*, 436 Pa.Super. 342, 647 A.2d 939, 941 (1994)).

¶ 10 The policy, under Section V paragraph E, defines "insured" as "any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage." The applicable UIM endorsement provides as follows:

**A. COVERAGE**

1. We will pay all sums the 'insured' is legally entitled to recover as damages from the owner or driver of an 'underinsured motor vehicle.' The damages must result from 'bodily injury' sustained by the 'insured' caused by an 'accident.' The owner's or driver's liability for these damages must result from the ownership, maintenance[,] or use of an 'underinsured motor vehicle.'

The endorsement defines an "insured" for the purposes of underinsured motorist coverage as follows:

**B. WHO IS AN INSURED**

1. You.
2. **If you are an individual**, any 'family member.'
3. Anyone else 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto.' The covered 'auto' must be out of service because of its breakdown, repair, servicing, loss or destruction.
4. Anyone for damages he or she is entitled to recover because of 'bodily injury' sustained by another 'insured.' (emphasis added).

The endorsement further defined a "family member" as "a person related to you by blood, marriage[,] or adoption who is a resident of your household, including a ward or foster child." *See* Section F of

Endorsement. The introduction portion of the policy describes "you" and "your" as "the Named Insured shown in the Declarations." The only named insured shown in the policy declarations was Outside–In, a corporation.

¶ 11 Thus, in order for the decedent to be entitled to UIM coverage he must qualify as an insured under the policy. Upon our review we find the policy in its entirety is not ambiguous. On its face, the policy does not include the decedent as an insured. In describing who is an "insured," the policy language "If you are an individual, any family member" plainly serves to qualify that coverage will extend to a family member only if the named insured is an individual. The policy language implicitly, if not explicitly, distinguishes between corporations and natural persons. Because Outside–In is not an individual, the "family member" language is simply inapplicable. We further reject the notion that such an interpretation renders the UIM coverage illusory because no party could ever make a claim. Outside–In purchased meaningful coverage because each person who occupies a company vehicle is thereby entitled to UIM coverage for that covered automobile. The fact that an occupant who qualifies as a class two insured[1] cannot also qualify as a class one insured does not render the UIM coverage meaningless. The law does not require every UIM policy to include each class of coverage.

■ ¶ 12 Despite the clear wording of the policy, the Estate nonetheless argues the policy should be construed to include the decedent, Jarret D. Poston, as an insured pursuant to the MVFRL's definition of insured. The Estate contends it is entitled to UIM benefits because the decedent

was a ward placed in the custody of the corporation and, therefore, resided in the household as a minor in the custody of the named insured. In support of this contention the estate directs our attention to the definitional section of the MVFRL, specifically § 1702, wherein the term insured is defined as "(1) [a]n individual identified by name as an insured in a policy of motor vehicle liability insurance. (2) If residing in the household of the named insured: .... (ii) a minor in the custody of either the named insured or relative of the named insured." The Estate maintains § 1702 "requires only that the minor be in the custody of the named insured and residing in the same household." Appellant's Brief at 11. We again disagree.

¶ 13 Even assuming the decedent can be said to have been "in the custody of" Outside–In and residing "in the household of" Outside–In, there remains no coverage unless the named insured is an individual. As was the case with the definition of insured under the policy with respect to "family member," the first part of the MVFRL's definition of insured likewise limits the named insured to an individual. The Estate would like us to ignore the fact that the first part of the definition unambiguously describes the named insured as an individual and instead construe the second part in a vacuum, without reference to the first part. This we cannot do. "In construing a statute to determine its meaning, courts must first determine whether the issue may be resolved by reference to the express language of the statute, which is to be read according to the plain meaning of the words." *Commonwealth v. Lopez*, 444 Pa.Super. 206, 663 A.2d 746, 748 (1995) (citing 1 Pa.C.S.A. § 1903(a)); *see also*, 1 Pa.C.S.A. § 1903(b)

---

1. As explained in *Jeffrey v. Erie Ins. Exchange,* 423 Pa.Super. 483, 621 A.2d 635, 644 (1993) (*en banc*), *appeal denied,* 537 Pa. 651, 644 A.2d 736 (1994), "most automobile insurance policies identify three classes of intended insureds: (1) class one—includes the named insured and any designated insured, and spouses or relatives if members of the same household; (2) class two—any other person

operating [or occupying] an insured vehicle; and (3) class three—any person entitled to recover damages because of bodily injury sustained by an insured under either # 1 or # 2" (i.e., a spouse claiming loss of consortium). *Caron v. Reliance Ins. Co.,* 703 A.2d 63, 66 fn. 6 (Pa.Super.1997), *appeal denied,* 556 Pa. 669, 727 A.2d 126 (1998).

(stating "[g]eneral words shall be construed to take their meaning and be restricted by preceding particular words."). The proper construction is readily ascertained by replacing the general term "named insured" in the second part of this definition with the particular description found in part one. Thus, subpart two would read as follows: "(2) If residing in the household of the [individual identified by name as an insured in a policy]: . . . (ii) a minor in the custody of either the [individual identified by name as an insured in a policy] or relative of the [individual identified by name as an insured in a policy]." Since we do not have an individual as the named insured in the policy at issue, the Estate's reliance on § 1702 is unavailing.

¶ 14 Additionally, the Estate urges this Court to adopt the reasoning advanced by the Wisconsin Supreme Court in *Carrington v. St. Paul Fire & Marine Insurance*, 169 Wis.2d 211, 485 N.W.2d 267 (1992) under a similar factual setting. In *Carrington*, St. Paul issued a corporate fleet policy insuring nineteen vehicles owned by Sunburst Youth Homes, Inc., where only Sunburst was a named insured. *Id.* at 268–71. Sunburst provided supervised care to children in need of protection and services. *Id.* Two minors who were living at Sunburst were injured while occupants in a Sunburst vehicle when it was struck by an uninsured motorist and claimed benefits under the home's policy. *Id.* The Wisconsin Supreme Court determined that the inclusion of the "family member" language in a corporate policy made the policy ambiguous. The court stated: "In this case, while it is reasonable to conclude that a corporation cannot have a 'family,' it is also reasonable to conclude that an insurance contract may define the term 'family member' such that an individual is a member of a corporate family for insurance purposes." *Id.* The court reasoned based upon the special relationship between Sunburst and the children, the insurance policy could be interpreted to conclude the children were family members of the named insured. *Id.* Therefore, the children qualified as named insureds and were entitled to stack coverage rather than merely qualify for benefits as occupancy insureds. *Id.* at 271–73.

¶ 15 We are not persuaded by the reasons expressed in *Carrington* that the instant policy should provide coverage. We find *Carrington* distinguishable from the present case based on the policy language. The Sunburst policy in *Carrington* defined "insureds" as including: (1) [y]ou; (2) [a] member of your family; and (3) anyone else in a covered automobile. *Id.* at 268–69. A member of your family was defined to include "a ward or foster child who lives with you." *Id.* The policy issued to Outside–In defines insured as "[y]ou" and "[i]f **you are an individual**, any family member." (Emphasis added.) With this qualifying language, "family member" is not ambiguous, as it is clear that coverage only extends to a family member if the named insured is an individual. Moreover, subsequent to the Wisconsin Supreme Court's decision in *Carrington*, this same distinction was recognized as requiring a different result by the Wisconsin intermediate appellate court in *Reed v. General Casualty Co. of Wisconsin*, 216 Wis.2d 205, 576 N.W.2d 73 (Ct.App.1997), *appeal denied*, 217 Wis.2d 518, 580 N.W.2d 689 (1998).

¶ 16 In *Reed*, the vice-president, director and minority shareholder of a closely held corporation was killed while driving one of the vehicles covered under the corporation's business auto policy. The tortfeasor's carrier paid its liability limits of $25,000, and the corporation's carrier tendered the $500,000 UIM benefit for the covered vehicle. Mrs. Reed sought a further tender of the additional UIM coverage available by stacking the coverage limits of the remaining fleet vehicles. The insurer denied the request asserting Mr. Reed was not a named insured, but rather an "occupancy" insured and, thus not entitled to stack UIM limits. The trial court agreed and granted summary judgment in favor of the insurer. On appeal, relying on the

principles applied in *Carrington*, Mrs. Reed argued that her husband was really a "family member" of the corporation due to his special relationship of being an officer/director/shareholder of a closely-held corporation. The appellate court disagreed finding the policy language differed from the policy in *Carrington*. In *Reed*, as in the instant case, the policy in question contained the identical qualifying language "If you are an individual, any 'family member'". *Reed*, at 73. Therefore, the court held "[t]he policy plainly extends coverage to family members only if the named insured is an individual." *Id.* at 75. Reading *Carrington* and *Reed* together, it seems that even in Wisconsin, coverage extends to corporate employees or wards under the terms "you" and "family member" only where the contract is unavoidably ambiguous or illusory. Conversely, where the terms of the policy plainly limit class one status to individuals, family coverage is inapplicable, and the corporate entity's UIM coverage is limited to class two and three insureds.

¶ 17 Whether the facts can be construed so as to find the decedent qualifies as a minor in the custody of Outside–In and residing in the household of Outside–In is irrelevant. In order to ask this question we would first have to find the policy language to be ambiguous, as previously noted the language of the instant policy specifically limits family coverage to individuals. Therefore it would be inappropriate for the court to create an ambiguity and rewrite the policy. Moreover, in light of the immutable fact that a corporation cannot sustain bodily injury, when the named insured is a corporation the main purpose of a business auto policy is to insure the corporation from liability for losses caused by operation of its vehicles. The fact that an insurance company drafts its policy so as to be adaptable to both individuals and corporations does not make it ambiguous. Nor does it provide a basis for extending coverage where none exists.

¶ 18 The prevailing view of the majority of jurisdictions considering similar language in business auto policies, in varying contexts, adhere to the simple principle that the term "family member" means nothing when "you" is a corporation and refuse to extend coverage. *See e.g., Rosenberg v. Zurich American Ins. Co.*, 312 Ill.App.3d 97, 244 Ill.Dec. 433, 726 N.E.2d 29 (2000) (denying UM coverage where appellant argued the corporate insured had a unique relationship with the injured party because it was a long-term facility that provided for all of his living needs and personal care); *Foote v. Royal Ins. Co. of America*, 88 Hawai'i 122, 962 P.2d 1004 (Ct.App.1998) (holding that the "family members" clause in a closely held corporation's uninsured motorist insurance policy did not apply to the corporation's sole shareholder, injured in an accident with an uninsured motorist while on his moped); *Concrete Services, Inc. v. U.S. Fidelity & Guar. Co.*, 331 S.C. 506, 498 S.E.2d 865 (1998) (denying coverage to the spouse of the sole shareholder of a closely held corporation on the basis that the policy actually specified that it covered the named insured and, if, but only if, the named insured is an individual, family members); *American States Ins. Co. v. C & G Contracting, Inc.*, 186 Ariz. 421, 924 P.2d 111, 113 (Ct.App.1996) (citing *Pearcy v. Travelers Indem. Co.*, 429 So.2d 1298, 1299 (Fla.Dist.Ct.App.1983) (rejecting argument that injured man was a "family member" of the corporation since he was the corporate president, part-owner and key employee)); *Langer v. United States Fidelity & Guar. Co.*, 552 A.2d 20, 22 (Me.1988) (ward of the State living in a State-operated institution injured while passenger on friend's uninsured motorcycle not entitled to UM benefits under "family members" clause in a business policy covering State, as the State did not have a "household" and primary purpose of the policy was to cover the fleet of state-owned vehicles); *see also, Steinwinder v. Aetna Cas. & Sur. Co.*, 742 So.2d 1150 (Miss.1999); *Grain Dealers Mut. Ins. Co.*

*v. McKee,* 943 S.W.2d 455 (Tex.1997); *Huebner v. MSI Ins. Co.,* 506 N.W.2d 438, 441 (Iowa 1993); *Sears v. Wilson,* 10 Kan. App.2d 494, 704 P.2d 389, 392 (1985); *Cutter v. Maine Bonding & Cas. Co.,* 133 N.H. 569, 579 A.2d 804, 807 (1990); *Buckner v. Motor Vehicle Accident Indem. Corp.,* 66 N.Y.2d 211, 495 N.Y.S.2d 952, 486 N.E.2d 810, 812 (1985).

¶ 19 The Estate also contends public policy considerations support the extension of UIM coverage to persons in decedent's circumstances. Specifically, the Estate asserts a denial of coverage to those persons over whom the corporate named insured assumes care, custody and control based on its status as a corporation rather than an individual defeats the primary purpose [2] of purchasing underinsured motorist coverage.

¶ 20 "[W]here the trial court determines that a provision in an insurance policy violates the public policy of this Commonwealth, our standard of review is plenary as said issue presents a question of law for our determination." *Caron v. Reliance Ins. Co.,* 703 A.2d 63, 66 (Pa.Super.1997), *appeal denied,* 556 Pa. 669, 727 A.2d 126 (1998).

Generally, a clear and unambiguous contract provision must be given its plain meaning unless to do so would be contrary to a clearly expressed public policy. *Antanovich v. Allstate Ins. Co.,* 507 Pa. 68, 76, 488 A.2d 571, 575 (1985). When examining whether a contract violates public policy, this Court is mindful that public policy is more than a vague goal which may be used to circumvent the plain meaning of the contract. *Hall v. Amica Mut. Ins. Co.,* 538 Pa. 337, 347, 648 A.2d 755, 760 (1994). As [Our Supreme] Court has stated:

Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy ... [.] Only dominant public policy would justify such action. In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts ... contrary to public policy. The courts must be content to await legislative action.

*Id.* at 347–48, 648 A.2d at 760 (citations omitted). [Our Supreme] Court has further elaborated that:

It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring [that the contract is against public policy]. *Mamlin v. Genoe,* 340 Pa. 320, 325, 17 A.2d 407, 409 (1941).

*Eichelman v. Nationwide Ins. Co.,* 551 Pa. 558, 563, 711 A.2d 1006, 1008 (1998).

¶ 21 In response, Evanston argues we should find this issue waived pursuant to Pa.R.A.P. 302(a) because it is being raised for the first time on appeal. Evanston asserts the Estate did not present this question for the trial court's consideration at the time of Evanston's motion for judgment on the pleadings either in its brief in opposition or during oral arguments. Our review of the record indicates Evanston's contention is correct. We acknowledge the Estate, by way of a pleading improperly captioned as a counter-

---

**2.** Underinsured motorist coverage provides "protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles." 75 Pa. C.S.A. § 1731(c); *see also, Paylor v. Hartford Ins. Co.,* 536 Pa. 583, 587, 640 A.2d 1234, 1235–36 (1994).

claim[3], did initially raise a public policy argument. However, the Estate failed to preserve this issue by again raising it either in opposition to Evanston's motion or in its own motion for judgment on the pleadings. Generally, an issue once raised must be preserved at each stage of the case. *See Kraus v. Taylor*, 710 A.2d 1142 (Pa.Super.1998) (holding where appellant raised 63 errors in post-trial motions, but briefed only 13, the other 50 issues were waived, and could not be raised on appeal) and *Bryant v. Girard Bank*, 358 Pa.Super. 335, 517 A.2d 968 (1986) (holding appellant precluded from raising issue on appeal which it failed to raise or suggest in post trial motions, or in brief filed in support of motions). Since the trial court was not given the opportunity to address this issue in the first instance, we have nothing left to review. *See e.g., Hoffmaster v. Harleysville Ins. Co.*, 441 Pa.Super. 490, 657 A.2d 1274 (1995) (criticized on other grounds in *American Casualty Co. v. Phico Ins. Co.*, 661 A.2d 939 (Pa.Cmwlth. 1995)), *appeal denied*, 542 Pa. 670, 668 A.2d 1133 (1995) (holding, after reviewing appellant's trial court brief on appeal from order granting summary judgment involving "other insurance" clause, that particular theory raised on appeal had not been raised below and, therefore, would not be considered on appeal).

¶ 22 Even if we were to consider the matter not waived, we would find the denial of coverage in light of the clear language of the policy is not violative of this Commonwealth's public policy. In *Hall v. Amica Mutual Ins. Co.*, 538 Pa. 337, 648 A.2d 755 (1994), noting the optional nature of uninsured motorist coverage[4] our Supreme Court stated: "Although uninsured motorist coverage serves the purpose of protecting innocent victims from irresponsible uninsured motorists, that purpose does not rise to the level of a public policy overriding every other consideration of statutory construction." *Id.* at 348, 648 A.2d at 760–761. Since uninsured and underinsured coverage serve the same purpose, the same can be said to apply with equal vigor in connection with UIM coverage. The fact that a Pennsylvania motorist need not purchase underinsured motorist coverage further undermines the argument that public policy in favor of protection against underinsured motorists has such force, that insurers cannot include any limitations as to who is covered in an underinsured motorist policy.

¶ 23 In *Hunyady v. Aetna Life & Casualty*, 396 Pa.Super. 476, 578 A.2d 1312 (1990), we rejected a similar public policy argument where a wife was injured while driving her personal auto and sought UIM benefits under her husband's employer's business policy. The named insured was the corporation and the policy defined who was insured as "[y]ou or any family member." *Id.* at 1313. In upholding the trial court's denial of coverage we found the language to be unambiguous. In response to the public policy argument we stated:

The MVFRL applies, however, to policies of insurance which cover an injured claimant as the insured party. Appellant cannot argue that the MVFRL requires a carrier to provide underinsured motorist benefits to parties not in the category of 'insureds.' Since appellant is not an insured party under the policy

---

**3.** We find the public policy issue is not a true counterclaim, as it merely represents an alternative argument in opposition to Evanston's denial of coverage.

**4.** 75 Pa.C.S.A. § 1731(a) provides:
(a) **Mandatory offering.**? No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional.
Act of 1990, Feb. 7, P.L. 11, No. 6, § 9, effective July 1, 1990. (Emphasis added).

written for appellee, public policy considerations do not come into play.

*Id.* at 1314. Likewise, the decedent is not an insured under the plain language of the instant policy and, therefore, public policy considerations are inapplicable.

¶ 24 Order granting judgment on the pleadings affirmed.